UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN WIEDERSPOHN, | Case No. 07-2074-JPD |
| Plaintiff, | ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| JEREMY FREEMAN, TREVOR VANDERVEEN, Washington residents, and WHATCOM COUNTY, a municipal corporation, | |
| Defendants. | |

I.     INTRODUCTION AND SUMMARY CONCLUSION

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. No. 21. Plaintiff Brian Wiederspohn has filed a response opposing the motion, Dkt. No. 23, to which Defendants have replied, Dkt. No. 25. After careful consideration of the motion, Plaintiff's opposition and the reply brief, the governing law, and the balance of the record, Defendants' Motion for Summary Judgment, Dkt. No. 21, is DENIED.

II.     FACTUAL BACKGROUND

On the night of December 28, 2004, Whatcom County sheriff deputies Jeremy Freeman and Trevor VanderVeen arrived at the front door of the home of Plaintiff Brian Wiederspohn

ORDER
PAGE - 1

1   in Custer, Washington. The deputies had an at-risk youth warrant for the arrest of a juvenile,
2   Lenell Ryan Stanford, whose mother believed he had run away from home. The deputies were
3   dispatched to Plaintiff's home that evening because Stanford's mother had notified law
4   enforcement that Stanford had returned home, only to leave again for his girlfriend's house.
5   Stanford's girlfriend was Plaintiff's stepdaughter, who lived with Plaintiff.

6   Plaintiff answered his front door in response to a knock by Freeman. Plaintiff's front
7   door opened into an indoor porch, in which Plaintiff stood with the door open. The deputies
8   notified Plaintiff that they were looking for "Lenell Stanford." Plaintiff only knew Stanford as
9   "Ryan" (his middle name), and as a result truthfully told the deputies that he did not know
10  anyone by that name and that no one by that named lived in his home. Dkt. No. 23-2, Exh. B.
11  The deputies asked Plaintiff who lived in the home, and he responded that he, his wife, his son,
12  and his stepdaughter lived there. *Id.* At that point, Plaintiff alleges that Freeman placed his
13  foot inside Plaintiff's front door. *Id.* This precluded Plaintiff from closing his front door. *Id.*
14  Freeman appears to have conceded that his foot was inside Plaintiff's home by virtue of
15  placing it "in the threshold of his door." *See* Dkt. No. 23-2, Exh. C. However, Freeman
16  contends that he needed to place his foot on the threshold to support his weight and to avoid
17  falling down, and to enable him to see and talk to Plaintiff at the door. *Id.* The deputies did
18  not have a search warrant for Plaintiff's home. Plaintiff asked the deputies several times to
19  leave, but they refused to do so. Dkt. No. 23-2, Exh. B. Plaintiff asked the deputies if they had
20  a warrant, and they responded that they "didn't need one." *Id.*

21  Plaintiff and the deputies continued standing opposite each other at the front door,
22  apparently at a stalemate. Plaintiff alleges that he then turned around and saw Stanford enter
23  the indoor porch from the home's living area. *Id.* Unbeknownst to Plaintiff, Stanford had been
24  in Plaintiff's stepdaughter's bedroom. According to Plaintiff, at that moment Freeman "busted
25  through the door," slammed Plaintiff against the door, squeezed Plaintiff's chest, and threw
26  Plaintiff over his hip into a stove and onto the floor. *Id.* As Plaintiff lay on the floor

ORDER
PAGE - 2

1  immobilized, VanderVeen came through the front door and used his Taser on Plaintiff.  *Id.*
2  Plaintiff contends that the deputies' alleged conduct violated Whatcom County's Use of Force
3  and Taser policies.

4      Defendants have a very different version of what happened.  They contend that Plaintiff
5  suddenly slammed Freeman with his front door, and that Freeman grabbed Plaintiff's hand to
6  regain his balance and to avoid falling backward.  Dkt. No. 22, Exh. A.  Defendants assert that
7  Freeman then attempted to pull Plaintiff outside to arrest him for the assault with the front
8  door, but Plaintiff pulled back, causing Freeman to fall through the front door and into
9  Plaintiff.[1]  *Id.*  Freeman testified that Plaintiff then resisted certain defensive tactics by
10  Freeman, such as an arm bar takedown, and that therefore Freeman had to swing Plaintiff onto
11  the floor, causing Plaintiff's hip to hit the stove that was on the porch.  *Id.*  Freeman then
12  attempted to roll Plaintiff onto his stomach so that he could be handcuffed, but Plaintiff fought
13  back against Freeman, so VanderVeen then entered through the front door and used his Taser
14  on Plaintiff to immobilize him.  *Id.*

15      Defendants also assert that Stanford entered the porch while the deputies were
16  handcuffing Plaintiff on the ground, and not before, as Plaintiff's testimony indicates.
17  Stanford's testimony appears to support this, as he testified that when he entered the porch,
18  "[Plaintiff] was on the ground and something weird was going on," and that Plaintiff was "in
19  some sort of pain."  Dkt. No. 22, Exh. D.  Stanford also did not see VanderVeen use his Taser
20  on Plaintiff.  *Id.*

21      What followed is also disputed by the parties.  Plaintiff alleges that the deputies
22  handcuffed him, took him outside, and then laid him face down in a mud puddle at the bottom
23  of the concrete ramp that leads to Plaintiff's front door.  Dkt. No. 23-2, Exh. B.  Plaintiff
24  alleges that VanderVeen then used his Taser on Plaintiff a second time, while Plaintiff was

---

[1] At Plaintiff's February 2006 criminal trial related to this incident, Freeman testified that he landed on top of Plaintiff. Dkt. No. 23-3, Exh. K.

ORDER
PAGE - 3

1    handcuffed on the ground and not a threat.  *Id.*  Defendants, however, contend that

2    VanderVeen did not use his Taser a second time, and submit the Taser's recorded firing data to

3    support this.  Dkt. No. 22, Exh. I.  Plaintiff disputes this evidence by noting that VanderVeen's

4    Taser's recorded firing data was not downloaded until nearly two and a half years after the

5    incident with Plaintiff, and by submitting testimony from Kevin Hester that Plaintiff alleges

6    calls into question the integrity of the data on VanderVeen's Taser.  *See* Dkt. No. 23-3, Exh. P.

7    Plaintiff also submits the testimony of his stepdaughter, who testified that she saw a blue flash

8    of light from the area where Plaintiff was handcuffed outside his home, and that she heard

9    screams from Plaintiff afterward.  Dkt. No. 23-3, Exh. E.  Stanford also testified that he heard

10   Plaintiff yell and scream while Plaintiff was outside.  Dkt. No. 23-3, Exh. F.

11            Plaintiff also asserts that VanderVeen's eventual removal of the Taser probe from

12   Plaintiff's genital area violated Whatcom County's Taser policy, as the probe, given its

13   location, should have been removed by medical personnel.  Dkt. No. 23 at 7.  Defendants

14   counter that VanderVeen's testimony reveals that he observed that the Taser probe had not

15   broken Plaintiff's skin, but was stuck in Plaintiff's clothing, and therefore VanderVeen

16   properly removed the Taser probe.  Dkt. No. 25 at 2-3.

17            After his arrest, Plaintiff was charged with third degree assault for allegedly assaulting

18   Freeman with his front door, based on the arrest reports submitted by Freeman and

19   VanderVeen.  Plaintiff contends that the deputies' arrest reports were knowingly false or made

20   with reckless disregard for the truth.  Plaintiff submits evidence that the deputies falsely

21   testified at Plaintiff's February 2006 criminal trial that they did not "compare notes" with

22   respect to their arrest reports concerning Plaintiff, and that the deputies each falsely referred to

23   "narrow" and "rickety" steps outside Plaintiff's front door in their arrest reports and at

24   Plaintiff's criminal trial (which Defendants assert caused Freeman to place his foot on the

25   threshold for support and enabled Plaintiff to pull Freeman off-balance).  Dkt. No. 23-2, Exhs.

26   A, C, D; Dkt. No. 23-3, Exhs. J, K, L.  Defendants respond that regardless of what the deputies

were standing on, it was dark outside that evening and they perceived themselves as unstable and off-balance as they stood outside Plaintiff's front door. Dkt. No. 25 at 3-4. Defendants acknowledge in the instant case that there is a concrete ramp that leads to Plaintiff's front door and not steps, and argue that it is implausible that the deputies would lie about something that is so obviously and verifiably wrong. *Id.* After his criminal trial, the jury found Plaintiff not guilty.

## III. JURISDICTION

Pursuant to 28 U.S.C. § 636(c), the parties have consented to having this matter heard by the undersigned United States Magistrate Judge. The Court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. § 1331, and venue is proper under 28 U.S.C. § 1391(b).

## IV. DISCUSSION

A. <u>Summary Judgment Standard</u>

"Claims lacking merit may be dealt with through summary judgment under Rule 56" of the Federal Rules of Civil Procedure. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That genuine issue of fact is "material" if it "might effect the outcome of the suit under the governing law." *Id.*

When applying these standards, the Court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *See United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing evidence that negates an essential element of the nonmoving

1    party's claim, or by establishing that the nonmoving party does not have enough evidence of an
2    essential element to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v.*
3    *Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

4    Once this has occurred, the procedural burden shifts to the party opposing summary
5    judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the
6    merits of the case. Fed. R. Civ. P. 56(e). The nonmovant must do more than simply deny the
7    veracity of everything offered by the moving party or show a mere "metaphysical doubt as to
8    the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
9    (1986). The mere existence of a scintilla of evidence in support of the plaintiff's position is
10   likewise insufficient to create a genuine factual dispute. *Anderson*, 477 U.S. at 252. To avoid
11   summary judgment, the nonmoving party must, in the words of Rule 56, "set forth specific
12   facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving
13   party's failure of proof concerning an essential element of its case necessarily "renders all
14   other facts immaterial," creating no genuine issue of fact and thereby entitling the moving
15   party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### B. Plaintiff's § 1983 Claim

Plaintiff's sole § 1983 claim is premised on alleged violations of his Fourth Amendment rights based upon Defendants Freeman and VanderVeen allegedly (1) entering Plaintiff's home and arresting him without a warrant; (2) arresting him without probable cause; (3) using excessive force; and (4) submitting arrest reports that were knowingly false or made with reckless disregard for their truth. Dkt. No. 3, ¶ 4.2. Plaintiff also alleges that Freeman and VanderVeen's actions were undertaken pursuant to a policy or custom of Whatcom County, and that Whatcom County failed to adequately train Freeman and VanderVeen. *Id.*, ¶¶ 4.3, 4.4.

1. <u>Summary Judgment Is Not Appropriate On The Issue Of Whether Freeman Crossed The Threshold Into Plaintiff's Home</u>.

The Supreme Court of the United States has held that any physical invasion of the home by law enforcement, without a warrant, "by even a fraction of an inch," violates the Fourth Amendment. *See Kyllo v. United States*, 533 U.S. 27, 37 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). Here, the parties dispute whether Freeman crossed the threshold into Plaintiff's home when Freeman was initially questioning Plaintiff at the front door. Plaintiff asserts that Freeman placed his foot inside Plaintiff's front door, which precluded Plaintiff from closing the door. Dkt. No. 23-2, Exh. B. While Freeman appears to have conceded at his deposition that his foot was inside Plaintiff's home by virtue of placing it "in the threshold of his door," Dkt. No. 23-2, Exh. C, Defendants argue that Freeman's testimony is not an admittance of "being inside the house," Dkt. No. 25 at 2. It is undisputed that the deputies did not have a search warrant for Plaintiff's home. Moreover, Plaintiff told the deputies that a "Lenell Stanford" was not in his home, which Plaintiff believed to be true, and asked the deputies several times to leave, to no avail. Dkt. No. 23-2, Exh. B. The Court finds that there is a triable issue of fact as to whether Freeman unlawfully crossed the threshold into Plaintiff's home with his foot when Freeman was initially questioning Plaintiff.

Defendants rely on *United States v. Santana*, 427 U.S. 38 (1976), for their contention that the threshold of Plaintiff's home is a "public place" for the purposes of the Fourth Amendment, and that therefore Freeman's conduct was not unlawful, regardless of where he placed his foot. However, *Santana* is easily distinguishable from the instant case, as *Santana* involved a suspect standing in her open doorway in plain view of the street outside, and who retreated into her home when she saw the police arrive in "hot pursuit." *Santana*, 427 U.S. at 40-41. Here, however, Plaintiff was inside his home with his door closed, and he was not a suspect fleeing police in hot pursuit. Moreover, while it is true that a portion of a front door's threshold is visible to someone standing outside, that is not the issue in this case: the issue here

is whether Freeman *crossed* over the threshold with his foot and placed it *inside* Plaintiff's home.  In other words, the question for the jury is whether Freeman's foot went beyond merely touching the exterior portion of the threshold that would be visible to someone standing outside the front door.  Plaintiff contends that Freeman's foot did; Defendants dispute this.  Accordingly, summary judgment is not appropriate on this issue.

    2. <u>There Are Triable Issues Of Fact Regarding Whether The Deputies Lawfully Entered Plaintiff's Home And Arrested Him.</u>

  The parties fiercely dispute what prompted the deputies to enter Plaintiff's home and subdue and arrest him.  Plaintiff alleges that when he turned around and saw Stanford enter the porch, Freeman "busted through the door," slammed Plaintiff against the door, squeezed Plaintiff's chest, and threw Plaintiff over his hip into a stove and onto the floor.  Dkt. No. 23-2, Exh. B.  In stark contrast to Plaintiff's account, Defendants contend that Plaintiff suddenly slammed Freeman with his front door, and that Freeman grabbed Plaintiff's hand to regain his balance and to avoid falling backward.  Dkt. No. 22, Exh. A.  Defendants assert that Freeman then attempted to pull Plaintiff outside to arrest him for the assault with the front door, but Plaintiff pulled back, causing Freeman to fall through the front door and into Plaintiff.  (At Plaintiff's criminal trial, Freeman testified that he landed on top of Plaintiff.)  Plaintiff then resisted certain defensive tactics by Freeman, and consequently Freeman had to swing Plaintiff onto the floor.  Dkt. No. 22, Exh. A.

  Viewing the evidence and all reasonable inferences therefrom in a light most favorable to Plaintiff, the Court finds that genuine issues of material fact exist regarding whether the deputies were justified in entering Plaintiff's home and subduing and arresting him.  Plaintiff contends that Freeman abruptly barged through the front door, and Defendants contend that Plaintiff unexpectedly slammed the door into Freeman.  While Stanford's testimony appears to conflict with Plaintiff's testimony on the issue of when Stanford entered the porch area (specifically, Plaintiff's testimony indicates it was before Freeman entered through the door

and Stanford's testimony suggests it was after Freeman entered the door and Plaintiff was on the ground), this variance in the context of all the other conflicting evidence is insufficient for the Court to rule as a matter of law that the deputies were justified in entering Plaintiff's residence and arresting him. Therefore, summary judgment is not appropriate on this issue.

### 3. There Are Triable Issues Of Fact Regarding Whether The Deputies Used Excessive Force.

Genuine issues of material fact abound regarding whether the deputies used excessive force on Plaintiff. For example, if a jury believes Plaintiff's version of what transpired, then Freeman was not justified in using force to subdue Plaintiff. If a jury believes that Plaintiff did not resist Freeman as Plaintiff contends, then Freeman's conduct as well as VanderVeen's use of his Taser would constitute excessive force. Moreover, if a jury believes Plaintiff's evidence in support of his claim that VanderVeen used his Taser a second time, then VanderVeen used excessive force, as Defendants concede. In view of the parties' conflicting versions of what happened, summary judgment on the issue of excessive force is not proper.

### 4. Summary Judgment Is Not Appropriate On The Remaining Issues.

The remaining issues are also not suitable for summary judgment. There are triable issues of fact regarding whether the deputies submitted arrest reports concerning Plaintiff that were knowingly false or made with reckless disregard for their truth. Plaintiff has submitted evidence that the deputies falsely testified at Plaintiff's February 2006 criminal trial that they did not "compare notes" with respect to their arrest reports concerning Plaintiff, and that the deputies each falsely referred to "narrow" and "rickety" steps outside Plaintiff's front door in their arrest reports and at Plaintiff's criminal trial. In addition, Defendants have not moved for summary judgment against Plaintiff's claims that Freeman and VanderVeen's actions were undertaken pursuant to a policy or custom of Whatcom County, and that Whatcom County failed to adequately train Freeman and VanderVeen. Accordingly, these remaining issues are not appropriate for summary judgment.

ORDER
PAGE - 9

V.  CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendants' Motion for Summary Judgment, Dkt. No. 21, be DENIED.

DATED this 8th day of January, 2009.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge